■ In the Matter of the Claim of JOSEPHINE FOURNIER, Respondent, against MERCHANTS & BUSINESS MENS, INC., et al., Appellants. WORKMEN'S

COMPENSATION BOARD, Respondent.— This is an appeal from the Workmen's Compensation Board affirming a decision of the referee that the decedent Benoit E. Fournier died as the result of acute myocardial infarction on March 21, 1954 which death was causally related to injuries sustained in an automobile accident January 7, 1953 which occurred in and arose out of his employment. No autopsy was performed at the time of death. No one questions that the automobile accident on January 7, 1953 arose out of and in the course of decedent's employment. When he filed his compensation claim on March 6, 1953, he stated his injuries as one to the neck. Dr. James F. Norton, attending physician, on January 17, 1953, in a preliminary report stated the injuries as follows: " Tenderness over cervical spine — difficulty in keeping eyes open. DX: Cerebral concussion. Possible cervical vertebra injury. Sprain muscle of shoulder and neck." Dr. Joseph D. Godfrey made a report on March 18, 1953 after an examination of the decedent at the request of his attending physician, Dr. Norton. Decedent gave a history of complaints, none of which referred directly or indirectly to any heart ailment. On March 19, 1953, the doctor signed a final report in which he made no mention of any heart or cardiac condition and as late as December 9, 1953 in the subsequent report he made no mention of any such condition, which was after his admittance to the Buffalo Hospital in May of 1953. On March 24, 1954, subsequent to the death of the decedent, Dr. Godfrey filed a report in which he said that at the time of his examination on February 20, 1954: " the patient informed the undersigned that he is having a great deal of difficulty with anginal symptoms and that his work is markedly restricted because of the same." Dr. Eugene J. Lippschutz made a report on December 21, 1954 in which he stated that he first examined the decedent in March, 1949, some four years prior to the automobile accident at which time his previous history of so-called " angina and coronary insufficiency" made at the Crile Clinic in Cleveland, Ohio in 1934 was noted as were the differing opinions of other cardiologists in Jamestown and New Haven. This doctor specialized in cardiology and he testified for the claimant at a hearing on July 13, 1955 in which he stated that besides the above history he had examined the decedent in 1951, in May of 1953, in December of 1953 and in March of 1954 at the time of his death. He sent decedent to the noted heart specialist, Dr. Paul White of Boston, for an examination on January 6, 1954 and incorporated in his testimony was part of Dr. White's report. There can be no question but what this doctor was intimately familiar with the condition of the deceased for some years prior to the happening of the automobile accident and continuing thereafter until the time of his death. He had no knowledge of the accident when he made any of the examinations. When he was asked for an opinion as to causal relationship between the condition of the deceased and the automobile accident at the hearing mentioned above, he gave this answer: " Q. Do you have an opinion as to whether there was any relationship between this accident and that condition? A. No, I do not have such an opinion." Dr. J. L. Norton, the attending physician of deceased for many years also testified for the claimant at the hearing on July 13, 1955. He was familiar with the physical condition of this decedent for some years prior to the happening of the accident and subsequent thereto to the time of his death. He was asked the following question and gave the following answer: " Q. Do you have an opinion, doctor, with reasonable certainty, viewing the matter as a whole, as to whether or not the death of Mr. Fournier was accelerated by the accident? A. I don't have any opinion on that." While Dr. Norton had no opinion as to whether the death of decedent was accelerated by the accident, in the course of his testimony he stated that following the

accident there were increasing symptoms of angina, that they seemed to be more frequent and "they laid him low". He was off work. That prior to May of 1953, he had ordered angina drugs for his use; that following the accident he noticed that he changed from a ruddy faced fellow to a gray color; that because of the complaints of more frequent attacks, it led the doctor to believe "that he wasn't as well". Dr. D. S. Levy testified for claimant at the hearing on July 13, 1955. He had never seen or treated the decedent during his lifetime and in answer to a hypothetical question which he apparently had studied and reviewed prior to appearing in court, he answered that in his opinion, the accident was causally related to the death of the decedent from acute myocardial infarction. This is the only medical testimony connecting the accident and the death 15 months later. Dr. Norton and Dr. Lippschutz were not asked the hypothetical question. The appellants, employer and insurance carrier, produced Dr. C. W. Greene, a specialist, who had never seen or treated decedent during his lifetime and in answer to a hypothetical question, it was his opinion that there was no acceleration or aggravation of the decedent's condition as a result of the accident herein. The appellants also called as a witness Dr. Werner J. Rose, a specialist in internal medicine and cardiology. He testified at a hearing October 18, 1955 and had the opportunity of reviewing all of the prior medical testimony of the various doctors and the testimony of the wife of the decedent. In answer to a hypothetical question, he stated that in his opinion, the death was in no way related to the accident. He further stated that part of the history at the hospital at the time of the decedent's admittance on March 21, 1954, was that he had attended a party and ate many rich foods, shrimps, and so forth, following which he collapsed. The doctor stated in his opinion, this could have precipitated the condition. The wife of the decedent testified as to the happening and severity of the accident and the damage to the front seat of the car, also various symptoms, complaints and observations concerning her husband from the time of the accident until his death. There was also testimony that the pain resulting from the injuries in the accident might have had some effect upon the heart condition from which he was suffering. The testimony, particularly that of Dr. Norton, adds quantitative strength to the testimony of Dr. Levy which established the causal relationship. It is sufficient to bridge the 15 months between the happening of the accident and death. From all the testimony presented the question of fact was resolved by the referee and the board in favor of the claimant. Decision and award affirmed, with costs to the Workmen's Compensation Board. Foster, P. J., Bergan, Herlihy and Reynolds, JJ., concur.